IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 14, 2004

## CALVIN J. OLIVER v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Marshall County**
**No. 15848     Charles Lee, Judge**

---

**No. M2004-01564-CCA-R3-PC - Filed March 3, 2004**

---

The petitioner appeals the denial of his petition for post-conviction relief, arguing that his guilty pleas were unknowing and involuntary and that his trial counsel were ineffective for failing to adequately explain the consequences of the pleas and for failing to raise the issue of his mental competency at the sentencing hearing. Following our review, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Danessa M. Aldridge, Fayetteville, Tennessee, for the appellant, Calvin J. Oliver.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On June 19, 2002, the petitioner, Calvin J. Oliver, entered open guilty pleas in the Marshall County Circuit Court to aggravated robbery, aggravated burglary, two counts of attempted aggravated robbery, and three counts of aggravated assault. At the conclusion of the sentencing hearing, the trial court merged the defendant's attempted aggravated robbery convictions into his aggravated robbery conviction and sentenced him as a Range II, multiple offender to eighteen years for the aggravated robbery conviction, seven years for the aggravated burglary conviction, and eight years for each of the aggravated assault convictions. The court ordered that the aggravated burglary and aggravated assault sentences be served concurrently with each other but consecutively to the eighteen-year sentence for aggravated robbery, for an effective sentence of twenty-six years in the

Department of Correction. The sentences were affirmed by this court on direct appeal, and no application for permission to appeal to the supreme court was filed. See State v. Calvin Jerome Oliver, No. M2002-02438-CCA-R3-CD, 2003 WL 21997736, at *1 (Tenn. Crim. App. Aug. 21, 2003).

The petitioner subsequently filed a *pro se* petition for post-conviction relief alleging that his guilty pleas were unknowing and involuntary and that he was denied the effective assistance of trial counsel. The petitioner asserted, among other things, that trial counsel failed to adequately explain his plea agreement to him and that he would not have pled guilty had he known what his guilty pleas entailed. Post-conviction counsel was appointed, and, at the evidentiary hearing, the petitioner narrowed his allegations of ineffective assistance to arguing that the attorney who represented him at the guilty plea hearing failed to adequately explain the pleas to him and that the attorney who substituted for trial counsel at the sentencing hearing failed to do everything he could to ensure that he received a fair hearing. Specifically, the petitioner asserted that substitute trial counsel should have introduced evidence with respect to his mental competency at the sentencing hearing.

The twenty-six-year-old petitioner testified he met with trial counsel five or six times during the course of counsel's representation. He said he informed trial counsel that he could neither read nor write and asked him to inform the trial court about his "mental history." The petitioner stated he attended special education classes but never graduated from high school, participated in the Special Olympics, and was twice housed in a mental facility. He said trial counsel told him he had requested a mental evaluation, but the trial court had denied it. According to the petitioner, trial counsel brought him two plea offers from the State: one for sixty years, which he rejected, and a second one for twelve years, which he "jumped on." Trial counsel did not, however, read the plea form to him, tell him that he would be pleading open to the indictment, or explain what pleading open meant. The petitioner claimed he did not understand what he was pleading to and that he replied with the appropriate responses to the trial court's queries as to whether he was knowingly, voluntarily, and intelligently entering the pleas only because trial counsel instructed him in what to say.

The petitioner testified he also informed substitute trial counsel, who took over his case after the guilty plea hearing, that he could neither read nor write. In addition, he made substitute counsel aware of his mental condition and, although he was not sure, thought he asked counsel to request a mental evaluation. He said he provided substitute counsel with a list of witnesses who testified on his behalf at the sentencing hearing. The petitioner's only complaint about substitute trial counsel was based on his claim that substitute trial counsel at some point told him to stop telephoning him and threatened that he would "mess [the petitioner's] case up," making it so that he could not file an appeal, if the petitioner kept "bugging" him.

The petitioner testified he believed that trial counsel "tricked" him into pleading guilty by telling him he would get a twelve-year sentence rather than the twenty-six-year sentence he actually received. He acknowledged he and trial counsel discussed the facts of the case but claimed not to remember any discussions they had about the inculpatory statements he had made to the police. He

also claimed not to remember any discussions with trial counsel and the prosecutor about the "all or none" nature of the State's plea offer, in which either all four codefendants would be allowed to plead guilty or none would plead guilty and all would proceed to trial. The petitioner later explained he had experienced problems with his memory his entire life. He testified he told trial counsel he wanted to go to trial, but trial counsel told him his only choice was to plead guilty.

Trial counsel testified he was appointed to represent the petitioner while the case was at the general sessions level and continued his representation through the guilty plea hearing. Approximately five or six weeks after the guilty pleas were entered, trial counsel had a heart attack and substitute trial counsel was appointed to represent the petitioner at the sentencing hearing. Trial counsel estimated he met with the petitioner to discuss the case at least five or six times after it was bound up to the criminal court level. He disagreed that the petitioner informed him of his alleged inability to read or write, testifying: "We never had that discussion, because we were exchanging notes from the get-go. So it wouldn't have made any sense to give me a handwritten note with information on it and then turn around and say oh, by the way, I can't read and write." Trial counsel acknowledged, however, that he never saw the petitioner read or write a note in his presence.

According to trial counsel, it was not the petitioner but instead a member of his family who suggested that the petitioner might have "some mental conditions that would mitigate his intentional involvement" in the crimes. Trial counsel testified he detected nothing in his conversations with the petitioner to indicate he had any sort of mental condition that would rise to the level of a defense; the petitioner was always able to answer his questions and assist him in formulating his defense. Nonetheless, "out of an abundance of caution," he investigated the petitioner's old files and discovered that a thorough mental evaluation had been performed on the petitioner in connection with the prosecution of the 1996 cocaine conviction for which the petitioner was on parole at the time the instant offenses were committed. Based on the results of that earlier evaluation, trial counsel did not request a mental evaluation in the case. He explained: "I felt like it was a fairly searching and thoughtful mental evaluation, which didn't reveal anything that would help us for the cases that were pending." He said he informed the petitioner of the results of the earlier mental evaluation.

Trial counsel testified that he requested and received discovery in the case, including the petitioner's statements, in which he admitted he acted as a lookout during the armed robberies, and the statements of the petitioner's codefendants, at least one of which placed the petitioner inside the victims' home as an active participant in the robberies. Trial counsel said he explained the law on criminal responsibility to the petitioner in the simplest terms he could, and, although the petitioner was not happy about it, counsel thought he understood the state of the law.

Trial counsel's memory was that the State's first offer was for the petitioner to plead guilty to all the major offenses in the indictment and for the time to run consecutively, for a total sentence of forty-eight years. He said the plea offer the petitioner ultimately accepted involved the petitioner's and all the codefendants' pleading open to the indictment, with each codefendant sentenced individually following a sentencing hearing. Trial counsel stated that he reviewed the

petitioner's presentence report, which showed three prior felonies, informed the petitioner he would be classified as a Range II offender, and went over with him the ranges of punishment for the offenses listed in the indictment. He also explained what pleading open meant and told the petitioner that he thought their best line of defense was to accept the offer and concentrate on the sentencing hearing. Trial counsel testified that, based on a line of recent supreme court cases, he believed there was a valid argument to be made that the sentences for all the offenses should run concurrently rather than consecutively.

Trial counsel testified that the petitioner was aware of the "all or none" nature of the State's plea offer and that he thought the petitioner understood the plea agreement "as much as any person who is not trained in the law." Trial counsel said he read the plea form aloud to the petitioner, and a young man in the petitioner's family, who was sitting with them at the time, read portions of the form aloud to the petitioner as well. According to trial counsel, the petitioner appeared to understand the consequences of his pleas and to know what he was doing when he pled guilty.

Substitute trial counsel, who was appointed following trial counsel's heart attack, testified that he had been licensed to practice law since 1996 and that his practice primarily consisted of criminal defense work. He said he reviewed the presentence report, provided a copy to the petitioner, and met with him at the jail to discuss it with him. The petitioner said he had read the report but did not understand it, and counsel therefore read it aloud to the petitioner as they reviewed it. Substitute trial counsel testified that, during their meetings at the jail, the petitioner gave him handwritten lists of the names of witnesses he wanted to testify at his sentencing hearing and that he also received handwritten lists from the petitioner in the mail. One such list was accompanied by a note stating, "Here is a list of people I need to come to court to testify on my behalf. Your time is greatly appreciated. Calvin Oliver." In addition, he received several handwritten letters signed, "Sincerely[,] Calvin Oliver." Substitute trial counsel testified the petitioner never informed him that he could not read or write, and he assumed, therefore, that the handwritten items he received had been written by the petitioner. He conceded, however, that he never saw the petitioner read or write.

Substitute trial counsel testified he contacted or attempted to contact all of the witnesses named by the petitioner. Most of the people he contacted "had no idea who [the petitioner] was." He testified he could tell that the petitioner had some mental problems. Nonetheless, he never considered having a mental evaluation performed because, based on his professional experience, the petitioner's mental condition or defects did not rise to the level of a defense. The petitioner was able to communicate fairly well, and counsel never noticed him experiencing any problems with his memory with respect to the facts of the case or what they had discussed in previous meetings.

Substitute trial counsel adamantly denied that he ever told the petitioner to stop telephoning him or had threatened to sabotage his case:

And he's got a memory problem here today if he says I got mad and wouldn't accept his phone calls. Because, Number 1, accepting the phone calls and recording it down on my time sheets, I would have been paid for it.

-4-

I love to get the calls. I never once refused any phone calls from that individual. So he must have a memory problem in that respect.

Counsel agreed that, as reflected in the direct appeal opinion, he attempted to show that the petitioner suffered from some mental defects through the testimony of a number of witnesses he ultimately presented on the petitioner's behalf at the sentencing hearing. He said the petitioner was facing sixty years, but, after putting on the "dog-and-pony show at the sentencing hearing," he got him twenty-six years rather than the fifty years that had been previously offered by the State. He, therefore, believed that he had done "a good job" and that he could not have achieved a better result.

At the beginning of the evidentiary hearing, post-conviction counsel informed the court that he was unable to locate Linda Taylor, a former Department of Human Services employee that the petitioner had wanted him to present at the hearing. At the conclusion of the hearing, the assistant district attorney provided post-conviction counsel with a contact number for Ms. Taylor, and the post-conviction court stated that it would delay entering its order to allow counsel time to contact Ms. Taylor and determine if she had any information that would warrant reopening his proof. Post-conviction counsel subsequently informed the court that he had spoken with Ms. Taylor and learned that she would not be able to provide any useful information. Thereafter, on June 1, 2004, the post-conviction court entered a memorandum opinion and order denying the petition for post-conviction relief.

## ANALYSIS

### I. Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

### II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App.

1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

### III. Allegations of Ineffective Assistance of Counsel

The petitioner contends he was denied the effective assistance of counsel at the guilty plea hearing because trial counsel failed to adequately inform him of the nature and consequences of his pleas. He further contends that substitute trial counsel was ineffective for failing to introduce evidence relating to his mental incompetency at the sentencing hearing.

In its opinion and order denying the petition, the post-conviction court, among other things, accredited the testimony of trial and substitute trial counsel and concluded that the petitioner had failed to meet his burden of proof in either his claim that he was denied the effective assistance of counsel or that his guilty pleas were unknowing and involuntary. The record fully supports the post-conviction court's findings and conclusions. Both trial and substitute trial counsel testified that the petitioner never informed them of his alleged inability to read, that he was able to communicate effectively with them, and that they concluded that his mental problems did not rise to the level of a defense. In trial counsel's case, that conclusion was bolstered, in part, by his discovery and review of a relatively recent mental evaluation that had been performed on the petitioner, which revealed nothing that would be helpful to his case. Trial counsel also testified that he explained the plea agreement to the petitioner, including, specifically, what pleading open to the indictment meant, and read the plea form aloud to the petitioner. Although the petitioner may not have been happy about

the law on criminal responsibility or the nature of the State's plea offer, he appeared to trial counsel to understand the ramifications of his plea and to know what he was doing in pleading guilty open to the indictment. Furthermore, he answered appropriately during the plea colloquy with the trial court, responding affirmatively to the court's queries of whether the signature on the petition was his, whether he read the petition before he signed it, whether he understood the various constitutional rights he was waiving by pleading guilty, and whether he understood the range of punishment for each offense. He also told the trial court that there was nothing in the petition he did not understand and that his guilty pleas were not the product of threats or coercion.

Substitute trial counsel denied that he ever told the petitioner to stop telephoning him, refused any of his calls, or threatened to "mess up" his case. He said he attempted to contact the potential witnesses the petitioner wanted to testify on his behalf, and he called a number of witnesses on the petitioner's behalf at the sentencing hearing. In this regard, we note that the transcript of the sentencing hearing reflects that, in addition to the petitioner, substitute trial counsel presented nine witnesses in the petitioner's defense, many of whom testified about the petitioner's mental deficiencies and limitations and the fact that he was easily influenced by others. See Calvin Jerome Oliver, 2003 WL 21997736, at **2-3.

Thus, we conclude that the petitioner has not met his burden of showing by clear and convincing evidence that trial counsel were deficient in their representation. The petitioner, is not, therefore, entitled to post-conviction relief on the basis of his claim of ineffective assistance of counsel.

## IV. Voluntariness of Guilty Pleas

In a related claim, the petitioner contends that his guilty pleas were not knowingly, voluntarily, or intelligently entered. When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, the Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's

relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

As the post-conviction court observed at the evidentiary hearing, the petitioner was already familiar with the criminal court system at the time he entered the guilty pleas. In addition to the three prior felonies referenced by trial counsel, the petitioner's presentence report reflects a lengthy misdemeanor criminal history beginning at the age of eleven and continuing through the time of his arrest for the instant offenses. Trial counsel's testimony, which was accredited by the post-conviction court, established that the petitioner was fully informed of the nature and consequences of the plea agreement and that he had the plea form read aloud to him before he entered his pleas. Moreover, as previously discussed, the transcript of the guilty plea hearing reveals that the petitioner responded appropriately during the plea colloquy, indicating to the trial court that he was entering the pleas voluntarily, knowingly, and intelligently. We conclude, therefore, that the petitioner is not entitled to post-conviction relief on this claim.

## CONCLUSION

We conclude the petitioner failed to meet his burden of demonstrating by clear and convincing evidence that he was denied the effective assistance of trial counsel. We further conclude that the petitioner's pleas were knowing and voluntary. Accordingly, we affirm the denial of post-conviction relief.

_____
ALAN E. GLENN, JUDGE